IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT L. LONGO, JR., | : Civil No. 3:17-cv-2104 |
| Plaintiff | : (Judge Mariani) |
| v. | : |
| LIEUTENANT WILLIAM WARNER, *et al.*, | : |
| Defendants | : |

## MEMORANDUM

Plaintiff Robert Longo ("Longo"), an inmate who was housed at all relevant times at the State Correctional Institution, Camp Hill, Pennsylvania, ("SCI-Camp Hill"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding *via* an amended complaint. (Doc. 16). The remaining Defendants are Lieutenant William Warner and Correctional Officer Olivia Welshans. Presently ripe for disposition is Defendants' motion (Doc. 44) for partial summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] For the reasons set forth below, the motion will be granted in part and denied in part.

---

[1] Defendants are not moving for summary judgment on the Eighth Amendment excessive force claim. (Doc. 46, p. 8 n.1).

I.   **Statement of Undisputed Facts**[2]

Longo is an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"). (Doc. 45, Statement of Material Facts, ¶ 1). Longo was housed at SCI-Camp Hill from January 2017 through March 2017. (*Id.* at ¶ 2).

At all relevant times, Defendants William Warner and Olivia Welshans were Corrections Officers at SCI-Camp Hill. (*Id.* at ¶¶ 3, 4).

On March 5, 2017, Longo was in the chow line when an incident occurred, and Defendant Warner told Longo to go back to his block. (*Id.* at ¶ 5; Doc. 51-1, Counterstatement of Material Facts, ¶ 1). An incident then occurred between Warner, Welshans, and Longo. (Doc. 45 ¶ 6; Doc. 51-1 ¶ 2). Longo ultimately received a misconduct for threatening an employee and their family, and for using obscene language. (Doc. 45 ¶ 6). Longo was then placed on a fence for Defendant Welshans to perform a pat-down search. (*Id.* at ¶ 7). During the pat-down search, Defendant Welshans touched Longo's buttocks on top of his clothes. (Doc. 45 ¶ 8; Doc. 51-1 ¶ 3). Defendant Welshans did not penetrate any part of Longo's body. (Doc. 45 ¶ 9). Longo contends that the touch of his buttocks was inappropriate. (Doc. 51-1 ¶ 3). During this incident, Longo asserts that

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (Docs. 45, 51-1).

2

Defendants Welshans and Warner used excessive force, which popped the stitches in his mouth and busted his nose, causing a bloody mouth and nose. (Doc. 45 ¶¶ 10-12; Doc. 51-1 ¶¶ 4-5). Defendants contend that Longo does not allege any other injuries. (Doc. 45 ¶ 13). Longo asserts that, as a result of the incident, he suffers from post-traumatic stress disorder, nightmares, and "other mental and physical injuries." (Doc. 51-1 ¶ 6). After the pat-down search, Longo was transported to the Restricted Housing Unit ("RHU") and strip searched. (Doc. 45 ¶¶ 14-15; Doc. 51-1 ¶ 7). The strip search was captured on video. (Doc. 45 ¶ 16; Doc. 51-1 ¶ 8). Defendants assert that the video reveals that there was no blood on Longo's face, mouth, or clothing, and Longo walks and talks normally. (Doc. 45 ¶¶ 17-18). Longo contends that he walked with a limp, and his speech was slurred due to the blood in his mouth and throat. (Doc. 51-1 ¶ 9).

Prior to March 5, 2017, Longo never had an interaction with Defendants Warner or Welshans. (Doc. 45 ¶ 19; Doc. 51-1 ¶ 10). After March 5, 2017, Longo never had an interaction with Defendants Warner or Welshans. (Doc. 45 ¶ 20; Doc. 51-1 ¶ 11).

On September 28, 2016, prior to Longo's incarceration at SCI-Camp Hill, he was arrested in Snyder County for charges connected to Docket Number CP-455-CR-0000404-2016. (Doc. 45 ¶ 21; Doc. 51-1 ¶ 12). On January 30, 2017, while housed at SCI-Camp Hill, Longo filed a *pro se* motion to dismiss the criminal charges. (Doc. 45 ¶ 22; Doc. 51-1 ¶ 13). On February 10, 2017, he filed a brief in support of the motion. (Doc. 45 ¶ 22; Doc. 51-1 ¶ 13).

On March 5, 2017, when Longo was transferred to the Restricted Housing Unit, his property was packed for storage until release from the RHU. (Doc. 45 ¶ 24; Doc. 51-1 ¶ 14). The property consisted of a box of clothes and books, and a box of legal paperwork for Docket Number CP-55-CR-0000404-2016. (Doc. 45 ¶ 23; Doc. 51-1 ¶ 14). When Longo was released from the RHU on March 21, 2017, the box of legal paperwork for his pending criminal case was missing. (Doc. 45 ¶ 25; Doc. 51-1 ¶ 15). The legal paperwork box contained discovery sent to him from the prosecutors at the Snyder County District Attorney's Office, letters from Longo's family that named alibi witnesses, and case law research and various office supplies. (Doc. 45 ¶¶ 26-28; Doc. 51-1 ¶ 16).

A hearing in Longo's criminal case was scheduled for May 11, 2017 regarding Longo's pending *pro se* motions. (Doc. 45 ¶ 29; Doc. 51-1 ¶ 17). On May 11, 2017, Longo requested counsel in his criminal case, and the hearing was continued. (Doc. 45 ¶ 30; Doc. 51-1 ¶ 17). An attorney from the Snyder County Public Defender's Office was appointed to represent Longo. (Doc. 45 ¶ 31; Doc. 51-1 ¶ 18). However, the attorney had a conflict of interest and, on June 16, 2017, a different attorney was appointed to represent Longo *pro bono*. (Doc. 45 ¶ 32; Doc. 51-1 ¶ 18). The attorney received a copy of the discovery packet that was lost in Longo's legal paperwork box. (Doc. 45 ¶ 33; Doc. 51-1 ¶ 19). The parties dispute whether Longo was able to recreate the list of alibi witnesses from the letters that were lost in his legal paperwork box. (Doc. 45 ¶ 34; Doc. 51-1 ¶ 19). Longo's attorney did not contact any of the alibi witnesses. (Doc. 45 ¶ 35; Doc. 51-1 ¶ 20). The attorney

represented Longo through the trial on November 29, 2017, and Longo was found guilty on all counts. (Doc. 45 ¶ 36; Doc. 51-1 ¶ 20). Longo believes that the jury was biased against him. (Doc. 45 ¶ 37). After trial, Longo's attorney appealed the conviction. (Doc. 45 ¶ 38; Doc. 51-1 ¶ 20). On appeal, the Pennsylvania Superior Court affirmed the conviction. (Doc. 45 ¶ 39; Doc. 51-1 ¶ 20).

## II. <u>Legal Standard</u>

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the

materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

6

## III. Discussion

### A. First Amendment Access to Courts Claim

Longo asserts that Defendants denied him access to the courts by misplacing his legal materials. (Doc. 1). In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's limited right of access to the courts. Prisoners are not necessarily "capable of filing everything" but have a right of access to "attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Lewis v. Casey*, 518 U.S. 343, 355 (1996). "The right of access to the courts must be adequate, effective and meaningful and must be freely exercisable without hindrance or fear of retaliation." *Milhouse v. Carlson*, 652 F.2d 371, 374 (3d Cir. 1981) (internal citations omitted). Following *Lewis*, courts have consistently recognized that such claims require some proof of an actual, concrete injury, in the form of direct prejudice to the plaintiff in the pursuit of some legal claim. *See Oliver v. Fauver*, 118 F.3d 175 (3d Cir. 1997). An inmate must demonstrate "(1) that they suffered an actual injury—that they lost a chance to pursue a non-frivolous or arguable underlying claim; and (2) that they have no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)) (internal quotations omitted).

Longo states that his missing legal materials hindered his ability to successfully litigate his criminal case in the Court of Common Pleas of Snyder County. The missing

legal documents consisted of state court motions, briefs, and letters and pictures from his family members. (Doc. 1; Doc. 51-1, p. 2). During the relevant time, Longo was represented by counsel in his criminal case. Although Longo's legal paperwork was missing when he was released from the RHU, it is undisputed that the prosecution provided Longo's attorney with the legal documents that SCI-Camp Hill had lost. (Doc. 45 ¶ 33; Doc. 45-1, Deposition of Robert Longo ("Longo Dep."), 71:8-12; Doc. 51-1 ¶ 19). To the extent that Longo believes he was unable to sufficiently prepare his defense, his mere hope that he would have been found not guilty if *he personally* had the missing legal documents is insufficient to meet the actual injury requirement.

Further, Longo has not established that he was prevented from pursuing a nonfrivolous claim in his criminal case, especially in light of his statement that the "bias of the jury" resulted in his conviction, not necessarily the missing legal materials. (Doc. 45-1, Longo Dep. 60:1-2). Because Longo failed to establish a basis for a legitimate challenge to his conviction, he has not established that he was denied access to the courts. *See Monroe*, 536 F.3d at 206 (plaintiffs' allegations that "defendants confiscated their legal materials" and that "they lost the opportunity to pursue attacks of their convictions and civil rights claims" without "specify[ing] facts demonstrating that the claims were nonfrivolous" did not state a claim).

In failing to establish actual injury or some legal loss, Longo fails to demonstrate that Defendants' conduct imposed a substantial impact on him. *See Monroe*, 536 F.3d at 205-

8

06 (stating that the complainant in an access to the courts claim "must describe the underlying arguable claim well enough to show that it is 'more than mere hope', and it must describe the 'lost remedy.'") (citation omitted). Consequently, Defendants are entitled to summary judgment on the access to courts claim.

### B.     Eighth Amendment Sexual Assault Claim

Defendants next seek summary judgment on the ground that the isolated pat-down search alleged by Longo is insufficient to establish an Eighth Amendment violation. (Doc. 46, pp. 15-17). To survive summary judgment on an Eighth Amendment challenge to a prison condition, a plaintiff must produce sufficient evidence establishing that: (1) he was incarcerated under conditions posing a substantial risk of serious harm (an objective inquiry), which "'may be established by much less than proof of a reign of violence and terror,' but requires more than a single incident or isolated incidents;" (2) the prison official-defendant acted with deliberate indifference to the substantial risk to the plaintiff's health and safety (a subjective inquiry); and, (3) the prison official's deliberate indifference caused the plaintiff harm. *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997)).

A punishment is cruel and unusual under the Eighth Amendment when it inflicts unnecessary and wanton pain, including those that are totally lacking in penological justification, *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981), and those which evince "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530

9

(1984). "'A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment.'" *Banks v. Rozum*, 639 F. App'x 778 (3d Cir. 2016) (quoting *Crawford v. Cuomo*, 796 F.3d 252, 257 (2d Cir. 2015)). However, a routine pat-down search, which includes the groin area, is a constitutional method of ensuring prison security. *See Grummett v. Rushen*, 779 F.2d 491, 495 (9th Cir. 1985) (finding that "routine pat-down searches, which include the groin area, and which are otherwise justified by security needs" do not violate the Constitution); *see Wolfe v. Beard*, No. 10-2566, 2013 WL 2370572, at *12 (E.D. Pa. May 31, 2013) (concluding that "[t]he Court's legal conclusion that [defendant's] search did not violate the Eighth Amendment is bolstered by the fact that other courts within this circuit have determined that a frisking officer's contact with an inmate's genitals or private areas during a single pat-down search is insufficient to constitute an Eighth Amendment violation.") (citations omitted); *see also Bradley v. United States*, 299 F.3d 197 (3d Cir. 2002) (upholding pat-down search by female customs inspector of female passenger at customs checkpoint where passenger alleged that inspector inappropriately touched her genitals through her dress); *Watson v. Beard*, No. 09-087J, 2013 WL 4648323, *9-10 (W.D. Pa. Aug. 28, 2013), *aff'd on other grounds*, 558 F. App'x 141 (3d Cir. 2014) (upholding pat-down search through clothing that included the groin area).

10

In order to constitute an Eighth Amendment claim, the incidents complained of must be "sufficiently serious" or "cumulatively egregious in the harm they inflicted." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). "[I]solated episodes of harassment and touching . . . are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve a harm of federal constitutional proportions as defined by the Supreme Court." *Obiegbu v. Werlinger*, 581 F. App'x 119, 121 (3d Cir. 2014) (quoting *Boddie*, 105 F.3d at 861). *See also Hughes v. Smith*, 237 F. App'x 756, 759 (3d Cir. 2007) (affirming dismissal of Eighth Amendment claim alleging an officer touched plaintiff's testicles through his clothing during a single pat-down frisk).

Longo challenges a single pat-down search before being placed in the RHU, conducted while fully clothed, during which Defendant Welshans allegedly inappropriately touched his buttocks. This was an isolated episode of touching, unaccompanied by any other inappropriate behavior and did not violate Longo's Eighth Amendment rights. Longo must raise "more than a mere scintilla of evidence in [his] favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989). Moreover, Longo concedes that he was fully clothed during the pat-down search, there was no penetration, and that the Pennsylvania State Police investigated Longo's allegations of sexual assault and found that the allegations were unsubstantiated. (Doc. 45-1, Longo Dep. 27:17-28:13; 40:11-18, 42:17-20; Doc. 51-1, p. 3).

11

Longo fails to come forth with any credible evidence that would indicate that Defendant Welshans violated his Eighth Amendment rights with respect to this claim. As such, Defendant Welshans is entitled to an entry of summary judgment on this Eighth Amendment claim.

### C.   Eighth Amendment Deliberate Indifference Claim

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (citation omitted). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or

treatment which the inmate receives does not support a claim of cruel and unusual punishment. See *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); see also *McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981).

Longo asserts that Defendants were deliberately indifferent to his medical needs when they refused to take him to the medical department. It is undisputed that Longo's injuries after the March 5, 2017 incident consisted of busted stitches in his mouth, a bloody mouth, and a busted and bloody nose. (Doc. 45 ¶¶ 10-12; Doc. 45-1, Longo Dep. 37:18-25; Doc. 51-1 ¶¶ 4-5). The Court finds that Longo has established that these conditions were serious medical needs under the standard set forth in *Estelle*. 429 U.S. at 104. The Court must next determine whether Longo has established a deliberate indifference to those needs.

Longo testified that he immediately requested medical attention, but Defendants Welshans and Warner, and all corrections officers in the RHU, denied his requests. (Doc. 45-1, Longo Dep. 38:21-39:4). Longo further testified that he never received medical attention for these injuries and did not receive any medical attention at all until his release from the RHU on March 21, 2017. (Doc. 45-1, Longo Dep. 39:20-40:3). Defendants argue that because Longo's injuries were not objectively serious, they were not deliberately indifferent to his medical needs by refusing to take him to the medical department. Defendants point to closed-circuit video footage of Longo's strip search on March 5, 2017,

13

directly after the incident with Defendants. (Doc. 45-2). Defendants assert that the video reveals that Longo was not actively bleeding, there was no blood his face, mouth, clothing, or body, he walked into the strip cell on his own, and he talked normally and clearly. Upon review of the security footage, the Court finds that the video does not conclusively show that Longo did not have any injuries to his mouth and face. The Court finds that there is a genuine dispute as to whether Defendants were deliberately indifferent to Longo's medical needs by refusing to provide any medical care to Longo after the incident on March 5, 2017. *See Estelle*, 429 U.S. at 104-05 (prison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by "intentionally denying or delaying access to medical care"). The Court will deny Defendants' motion for summary judgment with respect to the Eighth Amendment deliberate indifference claim.

## IV. Conclusion

Defendants' motion (Doc. 44) for partial summary judgment will be granted in part and denied in part. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: October 9, 2020